1
2
3
4
5
6                          UNITED STATES DISTRICT COURT
7                          EASTERN DISTRICT OF WASHINGTON

8    RUSSELL BEST,

9                Plaintiff,                    NO.  CV-06-172-RHW

10               v.                            **ORDER ADDRESSING
                                               PENDING MOTIONS**
11   BNSF RAILWAY COMPANY, a
     Delaware corporation,
12
                 Defendant.
13

14          Before the Court are Plaintiff's Motion to Compel and Request for Order to

15   Show Cause (Ct. Rec. 154) and Defendant's Motion for Modification or

16   Reconsideration of Order (Ct. Rec. 161).  A telephonic hearing on these motions

17   was held on January 7, 2008, in Spokane, Washington.  Plaintiff was represented

18   by Russell Ingebritson, Katherin Kohn, Jon Moyers, and Ronald Groshong.

19   Defendant was represented by Jeffrey Aultman, Douglas Albritton, Ausey Robnett,

20   and Frederick Martinez.

21          Also before the Court are Defendant's Motion to Disqualify Attorney Jon

22   Moyers (Ct. Rec. 76), Defendant's Motion to Disqualify the Law Firm of

23   Ingebritson & Associates (Ct. Rec. 99), and Defendant's Motion for Protective

24   Order Regarding Donald C. Wind (Ct. Rec. 177).  These motions were heard

25   without oral argument.

26                          **PROCEDURAL BACKGROUND**

27          Plaintiff filed this instant action on June 9, 2006.  A scheduling conference

28   was held on November 28, 2006.  Prior to the conference, the parties submitted a

**ORDER ADDRESSING PENDING MOTIONS ~ 1**

Joint Status Report in which the parties agreed that discovery would be completed by July 1, 2007, and agreed to an October 2007 trial date.

On May 18, 2007, Plaintiff filed a Motion to Compel (Ct. Rec. 18).  Plaintiff was seeking to compel Defendant to respond to Plaintiff's First Set of Interrogatories, Plaintiff's Requests for Production of Documents, and Plaintiff's Requests for Admissions.  A hearing on the motion was held on July 9, 2007.

At the hearing, Defendant's counsel indicated to the Court that it viewed Plaintiff's discovery requests as the bellweather case for hundreds of hearing loss cases that had been filed or were anticipated to be filed.  Defendant indicated that it intended to put together a comprehensive set of documents that would be responsive to Plaintiff's discovery requests, and that could then be used to facilitate discovery in every other case.

In its July 27, 2007, order granting Plaintiff's Motion to Compel, the Court accepted Defendant's explanation regarding the need to create a comprehensive set of discovery documents, but granted Plaintiff's Motion to Compel because Defendant failed to discuss its discovery concerns at the telephonic status conference, failed to request any extensions of time to file discovery, and failed to seek judicial approval to deviate from the Scheduling Order (Ct. Rec. 59).

On July 16, 2007, Plaintiff propounded Interrogatory No. 7 and Requests for Production Nos. 64, 70, and 71:[1]

**Interrogatory No. 7**:

> Has BNSF maintained that it has insurance coverage for past or current employee hearing loss claims. If so, describe in detail all such insurance policies, dates of alleged coverage, identity of insurance carriers, basis for your claim of coverage, claim numbers relating to BNSF's request for coverage, captions, and locations of lawsuits filed on behalf of BNSF for coverage, the status of insurance coverage and related lawsuits, the names of any BNSF witnesses deposed in any

---

[1]This discovery was first propounded on February 1, 2007.  Following a meet and confer with defense counsel, Plaintiff agreed to withdraw these particular discovery requests.  Plaintiff renewed the requests on July 16, 2007.

**ORDER ADDRESSING PENDING MOTIONS ~ 2**

such lawsuit and any agreements between BNSF and its carriers relative to the claims for coverage.

**Requests for Production No. 64:**

All depositions and sworn affidavits of BNSF management officials, experts, medical personnel, and corporate representative on topics relating to hearing conservation programs, hearing assessments of employees, sound level monitoring in the job site, workplace noise abatement and insurance coverage and claims.

**Request for Production No. 70:**

All insurance policies which BNSF claims or has claimed provides coverage for employee hearing loss claims.

**Request for Production No. 71:**

All litigation filed by BNSF for insurance coverage for hearing loss claims.

On August 20, 2007, Defendants filed a Motion for Protective Order (Ct. Rec. 60). Defendants sought a court order that would prevent the disclosure of information in discovery that is subject to a Confidentiality Order entered on July 8, 1993, by Judge Hillebrand in the Circuit Court for the Twentieth Judicial Circuit of Illinois, St. Clair County, Illinois. Oral argument on the motion was heard on September 25, 2007. At the hearing, Defendant's counsel admitted that he had not personally seen some of the documents that Defendant contended were covered by the Illinois Confidentiality Order.

On September 26, 2007, the Court entered an Order Denying Defendant's Motion for Protective Order with Leave to Renew (Ct. Rec. 112). The Court declined to disturb the Confidentiality Order that was entered by Judge Hillebrand, but also concluded that information responsive to Plaintiff's discovery requests would not necessarily be covered by the Illinois Protective Order. The Court ordered Defendant to identify those documents it could determine were not covered by the Protective Order and produce those documents to Plaintiff, if relevant. Defendant was also ordered to produce a log of the documents it believed were subject to the Protective Order. Defendant was to sufficiently identify the documents it contended could not be produced because of the Protective Order and make any relevance objections at that time. The Court directed Defendant to

**ORDER ADDRESSING PENDING MOTIONS ~ 3**

1  provide enough information regarding the documents to permit a reviewing court
2  to determine whether the document was covered by the Protective Order.  The
3  Court directed the parties to meet and confer to determine the timing of
4  Defendant's production of documents and preparation of the log.  At the hearing,
5  Defendant's counsel indicated that the parties would notify the Court "exactly how
6  long it's going to take to do this process to get the privileged log together" and to
7  provide to the Court the time frame as to when it would be completed.

8  The parties met and conferred and filed a Joint Status Report (Ct. Rec. 129).
9  Defendant agreed to prepare the following by November 1, 2007:

10  1.  An index of pleadings in the *Burlington Northern Railroad Company v.*
11  *AETNA Casualty & Surety Company, et al.*, case to include all dispositive
12  motions, together with exhibits thereto;
13  2.  An index of all depositions taken in the *AETNA* matter, to include the
14  dates of the deposition, and the names and titles of the deponents;
15  3.  An index of all documents generated by MTS;
16  4.  An index of all statistical summaries of hearing loss data pertaining to the
17  efficacy of BN's Hearing Conservation Program; and
18  5.  An index of the identification of all insurance policies, to include the
19  name, effective dates, and policy number.
20  *Id.*

21  The parties did not set a deadline for the filing of the privileged log.

22  The indices provide a description of the documents requested by Plaintiff in
23  the requests for production addressed by the Court in the order denying
24  Defendant's request for a protective order.  On October 31, 2007, Defendant
25  produced the indices (Ct. Rec. 157, Ex. A.)  In response, Plaintiff asked Defendant
26  to produce specific pleadings he had identified from the indices, and asked
27  Defendant to produce specific depositions identified in the indices (Ct. Rec. 157,
28  Ex. B).  Plaintiff asked that these documents and depositions be received by

**ORDER ADDRESSING PENDING MOTIONS ~ 4**

November 9, 2007.  Defendant has yet to produce the requested documents.

**1.    Plaintiff's Motion to Compel; Defendant's Motion for Modification or Reconsideration of Order**

On November 21, 2007, Plaintiff filed his Motion to Compel.  Plaintiff asked the Court to order the following:

1.    Order Defendant to show good cause why it is not in contempt of the Court's September 26, 2007, order;

2.    Compel Defendant to answer Plaintiff's discovery requests by producing the responsive documents without further assertions of privilege or objection;

3.    Compel Defendant to produce the pleadings and depositions designated by Plaintiff;

4.    Compel Defendant to verify whether its production of MTS documents are new or duplicates;

5.    Strike Defendant's general objections and compel Defendant to verify complete answers; and

6.    Compel Defendant to respond to discovery in compliance with the Federal Rules.

(Ct. Recs. 154, 156).

In its pleadings and at the hearing, Defendant asserts that based on a representative sample of the court file that it undertook, all deposition transcripts taken in *AETNA* are subject to the Illinois Protective Order.  This response does not comply with the Court's Order denying Defendant's request for a protective order.  While months have gone by since Plaintiff designated the documents and depositions that it wanted, Plaintiff and the Court are still without any specific information that would permit the Court to determine whether the requested discovery is, or should be, subject to the Illinois Protective Order.  The privileged log, as envisioned by the Court at the September 25, 2007, hearing, would provide sufficient information for a court to determine whether it should be produced in

**ORDER ADDRESSING PENDING MOTIONS ~ 5**

this case in spite of the protective order. Such information would include, at the minimum, identification of the deponent and his or her relationship to the *AETNA* and current litigation, and a brief summary of the testimony. Similar information should be provided for documents Defendant alleges are subject to the Illinois Protective Order. Defendant's unilateral determination that certain documents and depositions are covered by the Illinois Protective Order does not relieve it of its duty as set forth in the Federal Rules of Civil Procedure.

On November 29, 2007, Defendant filed a Motion for Modification or Reconsideration of Order (Ct. Rec. 161). Defendant asked the Court to eliminate the requirement that it produce a privileged log of the *AETNA* documents. The main thrust of Defendant's argument is that the burden and expense of preparing a privileged log far outweighs the benefit to Plaintiff's claim. Defendant now takes the position that Plaintiff represents a single claim for noise-induced hearing loss. Thus, the burden and expense, estimated at over 25,000 man-hours, far exceeds the needs of Plaintiff's counsel to prosecute his client's claim.

Defendant's response to Plaintiff's discovery requests are woefully inadequate and dilatory. This is evidenced by the fact that Defendant has failed to provide even one of the requested documents and depositions identified from the indices that Defendant provided. The Court finds it incredible that every one of the requested pleadings and depositions is covered by the Illinois Protective Order. Nor is it credible that the missing court file justifies the failure to provide the requested pleadings. The Court is confident that the identified pleadings are available in the St. Louis storage center, and in the files of the law firms that produced them. Moreover, it is clear that Defendant filed its motion for protective order without having looked at the pleadings it was trying to protect.

Finally, most disconcerting is the fact that in order to initially justify its lack of response, Defendant represented to the Court that it was creating a comprehensive set of discovery documents that would be provided to other hearing

**ORDER ADDRESSING PENDING MOTIONS ~ 6**

loss plaintiffs.  The Court relied on this representation to permit Defendant additional time to respond to Plaintiff's initial discovery requests.  Now Defendant appears to have abandoned this position and instead argues that Plaintiff's single claim for hearing loss cannot justify the creation of a comprehensive set of discovery documents.  While the Court does not agree with this position, it modifies its order requiring a privileged log of all *AETNA* documents and orders only that the privileged log be prepared with respect to the documents and depositions identified by Plaintiff in response to the indices (Ct. Rec. 157, Ex. B).[2]

Even so, to the extent that a document or deposition has been previously marked confidential, the Court's inquiry will not stop there.  Rather, each of the marked documents or depositions will have to be examined by this Court to determine whether the discovery is relevant to this particular cause of action.  If the Court concludes that it is relevant, then either this Court or the Illinois court will need to make a determination whether the Protective Order should be lifted to permit the parties in this action to access the discovery.  Which court is the appropriate arena to make this determination is left for another day.  Accordingly, in preparing the privileged log, it is imperative that Defendant provide adequate information to permit the Court to make its preliminary relevancy determination.

Defendant has not provided a sufficient explanation for its failure to provide the documents and depositions requested in Plaintiff's November 6, 2007, letter (Ct. Rec. 157, Ex. B).  The Court orders Defendant to provide all of the documents and depositions identified by Plaintiff in Ct. Rec. 157, Ex. B, on or before **January 24, 2008**.  If Defendant does not produce a requested document or deposition because it contends that it is covered by the Illinois Protective Order, Defendant shall provide Plaintiff a detailed description of the document or deposition on or

---

[2]The Court initially ordered the preparation of the privileged log based on the request of the parties.  The Court only has jurisdiction to order the privileged log for those documents that are responsive to Plaintiff's discovery requests.

**ORDER ADDRESSING PENDING MOTIONS** ~ 7

before **January 24, 2008**. The description should be detailed enough to permit the Court to determine whether the requested document or deposition is covered by the Illinois Protective Order.  Defendant is ordered to provide copies of the documents and depositions to its local counsel in Spokane so that they can be reviewed by the Court, if necessary, on or before **January 24, 2008**.

Additionally, the Court strikes Defendant's boilerplate objections submitted in response to Plaintiff's request for discovery.  The non-specific general objections are not sufficient to permit the Court or the Plaintiff to meaningfully determine the sufficiency of Defendant's response to legitimate discovery.  *See Burlington Northern & Santa Fe Railway Co. v. United States Dist. Ct. for the Dist. of Mont.,* 408 F.3d 1142 (9th Cir. 2005) (stating that "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege.").

Finally, the Court grants reasonable attorneys fees and costs to Plaintiff expended in bringing his Motion to Compel.

**2.    Defendant's Motion to Disqualify Attorney Jon Moyers**

On September 4, 2007, Defendant filed a Motion to Disqualify Jon Moyers. Defendant contends that because Jon Moyers, one of Plaintiff's counsel, was outside counsel for Defendant BNSF Railway for over 10 years, Rule 1.9 of the Washington Rules of Professional Conduct requires his disqualification from further representation of Plaintiff.

In determining whether an attorney's representation of a particular client violates the attorney's ethical responsibilities, the Court first refers to the local rules regulating the conduct of members of its bar.  *See Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 772 F.2d 435, 439 (9th Cir. 1983).   Local Rule 83.3 holds attorneys accountable for violations of the Washington Rules of Professional

**ORDER ADDRESSING PENDING MOTIONS ~ 8**

Conduct.[3]

    Rule 1.9 of the Washington Rules of Professional Conduct state:[4]

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

    (1) whose interests are materially adverse to that person; and

    (2) about whom the lawyer had acquired information protected by Rules 1. 6 and 1.9(c) that is material to the matter.

unless the former client gives informed consent, confirmed in writing.

---

[3]Local Rule 83.3(a).  This Court may impose discipline on any attorney practicing before this Court, whether or not a member of the bar of this Court, who engages in conduct violating applicable Rules of Professional Conduct of the Washington State Bar, or who fails to comply with rules or orders of this Court. The discipline may consist of disbarment, suspension, reprimand, or any other action that the Court deems appropriate and just.

[4]Rule 1.9 was amended in 2006.  The previous version of the rule stated: A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or

(b) Use confidences or secrets relating to the representation to the disadvantage of the former client, except as rule 1.6 would permit.

**ORDER ADDRESSING PENDING MOTIONS ~ 9**

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Under RPC 1.9, the question is whether the pending suit is "substantially related" to the matters in which counsel formerly represented the other party, and if he had access to material confidences. *Sanders v. Woods*, 121 Wash. App. 593, 597-98 (2004).[5] To determine whether the two representations are substantially related, the Court must: (1) reconstruct the scope of the facts of the former representation, (2) assume the lawyer obtained confidential information from the client about all these facts, and (3) determine whether any former factual matter is sufficiently similar to a current one that the lawyer could use the confidential information to the client's detriment. *Id.* The decision turns on whether the lawyer was so involved in the former representation that he can be said to have switched sides. *Id.*

Defendant maintains that the nature of Moyers's former relationship with

_____

[5]The Ninth Circuit Court of Appeals uses a similar test: an attorney will be disqualified from representing a client where that representation is adverse to a former client, and the present representation bears a substantial relationship to the attorney's former representation. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980). Substantiality is present if the factual contexts of the two representations are similar or related. *Id.*

**ORDER ADDRESSING PENDING MOTIONS** ~ 10

BNSF and the types of legal disputes he handled gave him unique knowledge of BNSF's Federal Employers Liability Act ("FELA") practices and procedures, including in-depth knowledge of claims handling practices, litigation strategy, deposition strategies, defense strategies, negotiation strategies and settlement strategies, which would benefit Plaintiff to the detriment of BNSF.  Defendant argues that Moyers handled hundreds of FELA cases, which is the only mechanism for railroad employees to bring a case against the railroad for personal injuries.

In support of its arguments, Defendant presented an affidavit from Moyers's former law partner, Jeff Hedger.  Hedger states that 90% of the firm's revenue was generated from representing BNSF in lawsuits filed against it in Montana and that most of the lawsuits arose under FELA, although the firm handled other lawsuits including crossing cases, indemnity claims against third parties, environmental litigation, and unfair trade practice litigation.  He claims that Moyers served as the registered agent for BNSF and accepted service of process.  Hedger indicates that Moyers had access to sensitive propriety information and personnel of BNSF, and he actively participated in and formulated litigation and negotiating and settlement strategies for BNSF.

In his affidavit, Rick Lifto, Assistant Vice-President of General Claims for BNSF, states that Moyers had access to the railroad's propriety information, litigation, defense, and settlement strategies.  Moyers formulated litigation and defense strategy, had substantial input in the negotiation of claims and handled appeals, and had information concerning the claims process.  Mr. Lifto states that Moyers' continued representation would severely damage BNSF's ability to fairly defend itself in litigation.

Finally, in their reply, Defendant filed a series of emails between Moyers and Sherri Payne, his former legal secretary, who was employed by Moyers's

**ORDER ADDRESSING PENDING MOTIONS ~ 11**

former firm.[6]  Defendant argues that the emails indicated that Moyers has obtained
additional confidential information from staff formerly employed by BNSF's
Montana counsel.

In his affidavit, Moyers states that the matters he handled for BNSF
primarily involved grade crossing accidents and personal injury claims.  He states
that he never handled an occupational hearing loss claim for BNSF.  He states that
he never received any confidential information regarding any hearing loss claims.

Here, the analysis is difficult because Defendant did not provide the Court
with the subject matter of the specific cases handled by Moyers for BNSF.  Rather,
Defendant asserts that Moyers handled hundreds of cases.  Without knowing the
facts and nature of the prior cases, the Court is unable to conduct the first step of
the disqualification analysis, namely, reconstructing the scope of the facts of the
former representation.  Even so, the Court infers during the course of Moyers's
prior representation of BNSF that Moyers received some confidential information.
On the other hand, the Court notes that Moyers did not work on any hearing loss
cases during the time that he represented BSNF, he never worked on any discovery
issues in regard to a hearing loss case with BSNF, and Defendant has not come
forth with any evidence that he had access to any confidential information
regarding hearing loss claims.[7]  Likewise, the Court finds that any information
obtained by Moyers during his representation would not be factually relevant
because the type of cases Moyers handled and Plaintiff's hearing loss claim were
not factually related or substantially similar.  The Court rejects Defendant's
argument that Moyers should be excluded because Moyers represented BNSF on

---

[6]After Moyers left the firm of Hedger Moyers, LLP, the firm merged with
Phillips & Bohyer to become Phillips, Bohyer & Hedger.

[7]The Court does not find the email exchange between Moyers and Sherri
Payne to be an indication that Moyers had access to confidential information
regarding hearing loss claims.

**ORDER ADDRESSING PENDING MOTIONS ~ 12**

FELA claims.  FELA provides a mechanism for injured railroad workers to bring claims against the railroad, but the subject matter and scope of the claims differs with every case.  The fact that Plaintiff handled prior FELA claims for BNSF does not provide a basis for disqualifying Moyers from this instant action.

3.    **Defendant's Motion to Disqualify the Law Firm of Ingebritson & Associates**

Defendant asks the Court to disqualify Plaintiff's counsel, Russell Ingebritson and his law firm.  The bases of the motion are: (1) that Ingebritson has been convicted of conspiring to defraud the United States Railroad Retirement Board; and (2) that Ingebritson, Kohn, and Groshong withheld the fact of Mr. Ingebritson's conviction from the Court.

According to Local Rule 83.1(c), an attorney must seek permission from the Court to participate in a particular case *pro hac vice*.  A motion to appear *pro hac vice* must include the following: (a) Applicant's address and phone number; (b) Dates of admission to practice before other courts;  (c) The name, address and phone number of admitted counsel with whom the applicant will be associated; (d) The necessity for appearance by the applicant; and (e) Whether the applicant has any pending disciplinary sanction actions or has ever been subject to any disciplinary sanctions by any court or Bar Association.[8]  Additionally, Local Rule 83.3 states that the Court may impose discipline on any attorney practicing before this Court, whether or not a member of the bar of this Court, who engages in conduct violating applicable Rules of Professional Conduct of the Washington

---

[8]In his Affidavit in Support of his *pro hac vice* application, Ingebritson stated that he had never been convicted of a crime involving moral turpitude. Kohn made the same statement but also stated that:

> I have not been charged in any court of the United States or of any state, territory or possession of the United States with the commission of a felony or unprofessional conduct.

**ORDER ADDRESSING PENDING MOTIONS ~ 13**

1   State Bar, or who fails to comply with rules or orders of this Court.

2       Washington Rules of Professional Conduct 8.4(b) provides that it is

3   professional misconduct for a lawyer to commit a criminal act that reflects

4   adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer.

5   Likewise, it is professional misconduct for a lawyer to engage in conduct involving

6   dishonesty, fraud, deceit or misrepresentation.

7       The Court reads Defendant's motion as asking for two things.  First, that

8   Ingebritson, Kohn, and Groshong be disqualified because they failed to comply

9   with the Local Rules regarding their *pro hac vice* applications; and second, that this

10  Court disqualify Ingebritson from appearing in the Eastern District of Washington

11  because he engaged in conduct that violates the Washington Rules of Professional

12  Conduct.  The Court declines to do either.  First, upon a close reading of the Local

13  Rule, there is no affirmative duty on the party of counsel to disclose to the Court

14  that counsel had been convicted of a misdemeanor or felony.  The Local Rule only

15  requires that the Court be informed of whether the applicant has any pending

16  disciplinary sanction actions or has ever been subject to any

17  disciplinary sanctions by any court or Bar Association.  At the time of his

18  application, Ingebritson did not have any pending disciplinary sanctions, nor had

19  he been subject to any disciplinary sanctions by any court or Bar Association.

20  Since the filing of his Application, Ingebritson has notified the Court that he has

21  been subject to disciplinary sanctions by the Minnesota State Bar Association.

22  Even so, Ingebritson remains in good standing and can practice law in that state.

23  Moreover, if the Court were to discipline Ingebritson for violating the Washington

24  Rules of Professional Conduct, a motion to disqualify is not the appropriate means

25  to do so.  Rather, under Local Rule 83.3, Ingebritson would be entitled to a

26  disciplinary hearing.  Therefore, the Court declines to disqualify Ingebritson,

27  Kohn, or Groshong.

28  **4.    Defendant's Motion for Protective Order Regarding Donald C. Wind**

**ORDER ADDRESSING PENDING MOTIONS ~ 14**

Defendant seeks a protective order precluding Plaintiff from taking the deposition of Donald C. Wind, a BNSF employee.  Defendant asserts that any information Mr. Wind has is protected by work-product privilege.  Defendant has not made an adequate showing that Plaintiff should be precluded from taking the deposition of Mr. Wind.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Plaintiff's Motion to Compel and Request for Order to Show Cause (Ct. Rec. 154) is **GRANTED**.

2.     On or before **January 24, 2008**, Defendant shall provide all of the documents and depositions identified in Plaintiff's November 6, 2007, letter.  If Defendant believes that the requested document or deposition is covered by the Illinois Protective Order, Defendant shall provide a sufficient description to permit the Court to determine whether the requested document or deposition would be covered by the Illinois Protective Order. On or before the same date, Defendant shall deliver copies of the depositions and documents withheld from production to its local counsel in Spokane for review by the Court, if necessary.

3.     On or before **January 24, 2008**, Plaintiff shall submit briefing to the Court regarding the amount of reasonable attorneys' fees and litigation costs arising from these motions.  Plaintiff is directed to file affidavits and a memorandum setting forth the legal basis and justification for any amount requested.  Plaintiff is directed to note the hearing without oral argument 30 days from the filing of the briefing.  Defendant shall file its response as set forth in the Local Rules for the Eastern District of Washington.

4.     Defendant's Motion for Modification or Reconsideration of Order (Ct. Rec. 161) is **GRANTED, in part,** and **DENIED, in part,** as set forth in this Order.

5.     Defendant's Motion to Disqualify Attorney Jon Moyers (Ct. Rec. 76) is **DENIED**.

6.     Defendant's Motion to Disqualify the Law Firm of Ingebritson &

**ORDER ADDRESSING PENDING MOTIONS ~ 15**

Associates (Ct. Rec. 99) is **DENIED**.

       7.    Plaintiff's Motion for Permission [to] File Over-Length Brief (Ct. Rec. 119) is **GRANTED**.

       8.    Plaintiff's Motion to Shorten Time and Note for Hearing (Ct. Rec. 130) is **DENIED**, as moot.

       9.    Plaintiff's Motion [to] File Over-Length Brief (Ct. Rec. 152) is **GRANTED**.

      10.    Plaintiff's Motion to Shorten Time (Ct. Rec. 165) is **DENIED**, as moot.

      **IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and to provide copies to counsel.

      **DATED** this 10th day of January, 2008.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Court

Q:\CIVIL\2006\Best\order4.wpd

**ORDER ADDRESSING PENDING MOTIONS ~ 16**